UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

H&S Contracting, Inc., et al.,

                    Plaintiffs,                    Court File No. 17-cv-355 (JRT/LIB)

        v.

                                                   **REPORT AND RECOMMENDATION**

Kinetic Leasing, Inc., et al.

                    Defendants.

---

This matter comes before the undersigned United States Magistrate Judge upon Defendant First Bank and Trust's Motion for Summary Judgment, [Docket No. 30]; Defendant Kinetic Leasing, Inc.'s Motion for Summary Judgment, [Docket No. 43]; and upon referral from the Honorable Chief Judge John R. Tunheim. (Order of Reference [Docket No. 68]). A hearing was held on April 9, 2018, after which the motions were taken under advisement. [Docket No. 78].

For the reasons set forth below, the Court recommends that Defendant First Bank and Trust's Motion for Summary Judgment, [Docket No. 30], be **GRANTED in part and DENIED in part**, and Defendant Kinetic Leasing, Inc.'s Motion for Summary Judgment, [Docket No. 43], be **DENIED**.

## I.    BACKGROUND

In 2006, First Bank & Trust (hereafter "FB&T") began a lending relationship with Concrete Contractors, Inc. (hereafter "CCI"), a South Dakota entity. FB&T extended loans to CCI, and CCI executed a Commercial Security Agreement dated February 9, 2006, which granted First Bank & Trust a security interest in all of CCI's machinery, vehicles, and other

equipment to secure "all present and future debts." (Tetzlaff Aff., [Docket No. 32], at ¶ 3, FB&T Answer, [Docket No. 4], at Ex. A). This February 9, 2006, security agreement provided that CCI would "not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without [First Bank & Trust's] prior written consent." (FB&T Answer, [Docket No. 4], at Ex. A). The security agreement further provided that upon any default FB&T was entitled to repossess the collateral to dispose of it to satisfy any secured debt. (Id.). FB&T perfected its security interest in CCI's equipment and other property on February 9, 2006, by filing a UCC financing statement with the South Dakota Secretary of State's Officer, and it thereafter continued to renew this South Dakota filing. (Id. at Ex. B).

On January 30, 2009, CCI executed a Guaranty in which CCI personally guaranteed all debts and other obligations of a related entity, Syntech, Inc., and this Guaranty provided that it was secured by the February 9, 2006, Security Agreement. (Tetzlaff Aff., [Docket No. 32], at Ex. A). Pursuant to the Guaranty, CCI guaranteed "all present and future debts of" Syntech Inc. (Id.).

Syntech defaulted on its obligations to FB&T in 2010. (Tetzlaff Aff., [Docket No. 32], at ¶ 6). And, CCI has refused to pay any of the indebtedness owed by Syntech to FB&T. (Id. at ¶ 8).

On October 1, 2015, CCI sold various pieces of construction equipment[1] to Plaintiff H&S Contracting. (Compl., [Docket No. 1], at ¶ 7). The following day, on October 2, 2015, as part of the same transaction and allegedly as a means to finance the acquisition of the equipment, H&S Contracting sold all of the equipment to Defendant Kinetic Leasing, Inc., (hereafter "Kinetic") which then leased all of the equipment back to H&S Contracting. (Id. at ¶ 9). As part of the lease consideration, Plaintiff Tracy Hazelton (the sole owner of H&S Contracting) was required to and

---

[1] The equipment included a Komatsu BR380 Jaw Crusher, a Track Screener, a Swift 36' x 125' Conveyor, a Swift 36' x 80' Conveyor, and a Swift 36' x 60' Conveyor (collectively the "Equipment"), as well as, a KPI-JCI FT4250 Track Crusher ("KPI Crusher"). (Zimmerli Aff., [Docket No. 33], at Ex. A).

did personally guarantee the payments due under the Kinetic lease. (Id. at ¶ 12). The equipment was physically transferred from CCI in South Dakota to H&S Contracting in Minnesota, and at least by October 6, 2015, H&S Contracting accepted delivery of the Equipment. (Zimmerli Aff, [Docket No. 33], at Ex. B at 1, Ex. D).

On May 1, 2016, Plaintiff H&S Contracting notified Defendant Kinetic that it no longer needed the equipment, and H&S Contracting "proposed to sell the equipment and pay off the lease." (Compl., [Docket No. 1], at ¶ 13). Defendant Kinetic then authorized H&S Contracting to act as its agent in the sale of the Equipment. Plaintiff H&S Contracting contracted with Iron Planet to arrange a sale of one item of equipment, a KPI Crusher, and on or about May 24, 2016, Iron Planet subsequently sold the KPI Crusher for a sale price of $220,000.00. (Id. at ¶ 15). Pursuant to the agreement between Plaintiff H&S Contracting and Defendant Kinetic, a portion of the sales proceeds were paid to Defendant Kinetic to reduce the balance due from Plaintiff H&S Contracting on the Kinetic lease, and a portion of the proceeds were paid to Plaintiff H&S Contracting. (Id.).

In September 2016, Plaintiff H&S Contracting contracted with Ritchie Brothers Auctioneers to sell the remaining Equipment. (Id. at ¶ 16). Plaintiff H&S Contracting and Defendant Kinetic entered into an agreement whereby Plaintiff H&S would be the seller of the Equipment, and upon the sale, the proceeds would remit to Defendant Kinetic to be applied again against sums owed by H&S Contracting under the Kinetic lease. (Id. at ¶ 17). The auction was scheduled to take place on September 16, 2016. (Id. at ¶ 18).

However, on September 15, 2016, Plaintiff H&S Contracting was informed that Defendant FB&T claimed a security interest in the Equipment. (Id. at ¶ 19). Specifically, on September 15, 2016, outside counsel for Ritchie Brothers Auctioneers provided that Ritchie

Brothers had been contacted by attorney Kristina M. Schaefer on behalf of FB&T regarding a demand for the proceeds of the sale of the Equipment. (Kinetic Ans., [Docket No. 4], Ex. C).

As a consequence of FB&T's claim, Ritchie Brothers, in communications with FB&T and Kinetic Leasing, noted that since a demand had been made, it needed "to insure that it [could] provide free and clear title to its buyer at" the auction or it could not proceed with the sale. (Id.). Ritchie Brothers indicated that it would proceed with the sale if "both [FB&T] and Kinetic agree and authorize [Ritchie Brothers] to conduct the auction and further agree that the equipment sold at the auction will be free of their respective liens. Both [FB&T] and Kinetic's liens will attach to the net sales proceeds in their present priority, whatever that priority may turn out to be determined, either by settlement or by court order." (Id.). Ritchie Brothers' counsel further provided that "by copy of this email to Ms. Schaefer, I would request that both [FB&T] and Kinetic inform me by return email if they are in agreement with this procedure which will allow RBA to conduct the auction as noticed." (Id.).

On September 15, 2016, Kristina M. Schaefer, counsel for FB&T responded to Ritchie Brothers' counsel's email providing that FB&T "agrees that the auction can proceed based on the terms outlined herein---specifically, that the net proceeds received at the auction for the five items sold will be held until mutual instructions from [FB&T] and Kinetic or court order awarding the funds." (Id.). Included in that email was a copy of the email Ritchie Brothers' counsel had sent to Kinetic. (See, Id.).

Also on September 15, 2016, Al Hintz, President of Kinetic Leasing, responded to Ritchie Brothers' counsel's email. Mr. Hintz wrote as follows:

> While we have not had time to consult with our legal counsel yet, I am in agreement with the same terms that Kristina Schaefer had stated as to [FB&T].

> Kinetic Leasing, Inc. agrees that the auction can proceed based on the terms outlines herein – specifically, that the net proceeds received at the auction for the five sold items will be held until mutual instruction from [FB&T] and Kinetic or court order awarding the funds.

(Id.).

Defendants did not inform Plaintiff H&S Contracting of the agreement to continue with the sale and withhold the funds. (Id.). The sale proceeded and the funds were withheld.[2]

On November 7, 2016, Kinetic's counsel at the time sent a letter to FB&T's counsel before the commencement of the present action regarding the September 15, 2016, emails between the parties. (Letter [Docket No. 49-1]). Kinetic's counsel wrote that it was his understanding that FB&T's position was "the wording in Policar's [Ritchie Brothers'] email" was "tantamount to an agreement between the parties that [FB&T's] lien has priority over Kinetic's and that this language tolls any obligations for [FB&T] to do anything else required by the U.C.C. to perfect its lien." (Id.). Kinetic's counsel countered that it never had such an understanding because at the time the agreement was entered into it "did not know who had the superior lien and it was under the impression that the statues governing the U.C.C. would decide the prevailing party." (Id.). Kinetic's counsel further provided in part that

> [l]ikewise, Kinetic did not agree to toll any U.C.C. provisions to allow FB&T to perfect its lien in Minnesota. In fact, one could surmise Mr. Policar's statement meant the exact opposite, in that FB&T was bound to maintain its status as only being perfected in South Dakota ("in their present priority . . .") and was barred from filing anything during the one year period allowed by  the U.C.C. to re-perfect in Minnesota. Although, I think Kinetic's understanding is a more reasonable way to interpret Mr. Policar's writing, to wit, the U.C.C. will determine the outcome and FB&T was not precluded from doing whatever was needed to perfect in other states.

(Id.).

---

[2] These funds have now been deposited with the Court. [Docket Nos. 11, 12].

On the basis of the above facts, Plaintiff H&S Contracting alleged a Breach of Contract claim, as well as, a claim of Interference with Contractual Relationships against Defendant Kinetic Leasing. (Compl., [Docket No. 1], at ¶¶ 26–34). Plaintiffs also sought declaratory judgment finding that Defendant FB&T has no claim to the proceeds of the Equipment sale, "and that Kinetic has a claim to the proceeds provided that plaintiffs be appropriately credited in whole against the lease between H&S [Contracting] and Kinetic [Leasing], reducing the amount due under the [Kinetic] lease, and thereby reducing the amount of Hazelton's liability under his personal guarantee of the lease." (Id. at ¶¶ 35–44, Prayer for Relief).

On February 27, 2017, Defendant FB&T answered the present Complaint, and it raised crossclaims against Defendant Kinetic, as well as, counterclaims against Plaintiff H&S Contracting. [Docket No. 4]. Defendant FB&T seeks declaratory judgments against Plaintiff H&S Contracting and Defendant Kinetic declaring the respective rights of the parties in the proceeds from the sale of the Equipment at issue. (Id. at ¶¶ 29–43). Defendant FB&T also raises separate counterclaims of conversion against Plaintiff H&S Contracting and similar crossclaims against Defendant Kinetic. (Id. at ¶¶ 44–55). Defendant FB&T does not raise any counterclaims against Plaintiff Hazelton directly.

On March 1, 2017, Defendant Kinetic answered the present Complaint raising its own crossclaims against Defendant FB&T and counterclaims against Plaintiff H&S Contracting. [Docket No. 6]. Defendant Kinetic raises a crossclaim against Defendant FB&T seeking declaratory judgment that Defendant FB&T has no claim to the equipment or the proceeds of the sale of the Equipment at issue. (Id. at ¶ 76). Defendant Kinetic also raises a counterclaim for Breach of Warranty Title against Plaintiff H&S Contracting. (Id. at ¶¶ 82–85). Defendant Kinetic does not raise any counterclaims against Plaintiff Hazelton directly.

All of the claims raised by Plaintiff H&S Contracting, as well as, all of the crossclaims and counterclaims raised by Defendants Kinetic and FB&T arise out of the same facts, i.e., the sale of the equipment at issue and who is entitled to the proceeds from that sale. The parties do not dispute these facts.

On October 9, 2017, Defendant FB&T filed its Motion for Summary Judgment. [Docket No. 30]. Plaintiff H&S Contracting, through counsel, responded to Defendant FB&T's motion. [Docket No. 42].

On November 10, 2017, Defendant Kinetic filed its own Motion for Summary Judgment. [Docket No. 43]. Plaintiff H&S Contracting did not responded to Defendant Kinetic's Motion for Summary Judgment, and Plaintiff's time to respond has long lapsed.

On December 8, 2017, Plaintiff Tracy Hazelton filed an affidavit verifying that he had commenced a personal Chapter 7 bankruptcy. (Hazelton Aff. [Docket No. 51]). After Plaintiffs' counsel moved to withdraw, Plaintiff Hazleton acknowledged his support of counsel's withdrawal, indicated that he wished to proceed pro se, and acknowledged that Plaintiff H&S Contracting could not appear in court unless represented by an attorney. (Id.). Plaintiff Hazelton further indicated that he would not appear at the hearing on Defendants' Motions for Summary Judgment; he purported to join Defendant Kinetic's opposition to Defendant FB&T's motion for summary judgment; and he expressly stated that he breached no duty or warranty of title to Defendant Kinetic. (Id.).

On February 2, 2018, this Court allowed Plaintiffs' counsel to withdraw as counsel of record without substitution. (Order [Docket No. 67]). Plaintiff Hazleton is now proceeding pro se, and there has not been any appearance by substitute counsel made on behalf of Plaintiff H&S Contracting.

On February 28, 2018, Chief Judge Tunheim referred the present Motions for Summary Judgment, [Docket Nos. 30, 43], to the undersigned for Report and Recommendation. (Order [Docket No. 68]).

## II.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also, Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992).

The moving party bears the burden of offering sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When deciding a motion for summary judgment, a court views the evidence before it in the light most favorable to the nonmoving party and all reasonable inferences that may be drawn from the underlying facts in the record must be drawn in the favor of the nonmoving party. Ludwig v. Anderson, 54 FG.3d 465, 470 (8th Cir. 1995); Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

"[P]ro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984). The claims of a pro se plaintiff cannot

survive a motion for summary judgment unless the plaintiff has set forth specific admissible facts demonstrating the existence of a genuine issue for trial. See, Quam v. Minnehaha Cty. Jail, 821 F.2d 522, 522 (8th Cir. 1987).

### III.    Motions for Summary Judgment. [Docket Nos. 30, 43].

Defendant FB&T's Motion for Summary Judgment, [Docket No. 30], asks the Court to enter judgment in favor of FB&T on all declaratory judgment claims; "declaring that FB&T's claim to the proceeds from the September 16, 2016, sale of the Equipment . . . is prior and superior to any claim of H&S contracting, Inc., Tracy A. Hazleton, and Kinetic Leasing, Inc."; ordering that the proceeds from the September 16, 2016, sale of the Equipment be immediately distributed to FB&T; and "[e]ntering judgment in favor of FB&T and against H&S Contracting, Inc., jointly and severally, in the amount of $550,000.00 for conversion of the Equipment."[3]

Defendant Kinetic's Motion for Summary Judgment, [Docket No. 43], asks the Court to enter "judgement in favor of Kinetic on all declaratory judgment claims and declaring that Kinetic's claim to the proceeds from the May 24, 2016, sale and September 16, 2016, sale of the Equipment is a [sic] superior to the claims of H&S Contracting, Inc. ('H&S') and [FB&T]"; "[o]rdering that the proceeds from the September 16, 2016, sale of the Equipment . . . be immediately distributed to Kinetic"; entering judgment "in favor of Kinetic on its claim for breach of warranty of title against H&S"; and "[o]rdering that H&S defend Kinetic in the above-captioned matter and pay for all of Kinetic's reasonable attorney's fees and costs incurred in defending itself in this action."

---

[3] FB&T's pleadings are somewhat inartful as to whom it believes H&S Contracting ought to be held "jointly and severally" responsible with, however, from the briefing and oral argument on the present motions it is readily discernable that FB&T means H&S Contracting and Kinetic Leasing in this regard.

## A.  Proceeds of September 16, 2016, Richie Brothers' Sale

It is undisputed that at the time CCI sold the Equipment to Plaintiff H&S Contracting, Defendant FB&T had a perfected security interest in the Equipment in South Dakota where the Equipment was physically located before it was sold. (Tetzlaff Aff., [Docket No. 32], at ¶ 3 & Ex. A; FB&T Answer, [Docket No. 4], at Ex. A). This perfected security interest survived the disposition of the Equipment from CCI to Plaintiff H&S Contracting, and it survived the lease back transaction between Plaintiff H&S Contracting and Defendant Kinetic. See, Minn. Stat. § 336.9-315.

Plaintiff H&S Contracting and Defendant Kinetic, however, argue that FB&T's once-perfected security interest in the Equipment has been retroactively subverted pursuant to the requirements of Minnesota Statute § 336.9-316. They reason that although a security interest perfected in one jurisdiction (South Dakota) remains perfected for one year after a transfer of collateral to a person that becomes a debtor (H&S Contracting) and is located in another jurisdiction (Minnesota), FB&T's security interest in the Equipment became "unperfected and is deemed never to have been perfected as against a purchaser of the collateral for value" because FB&T failed to perfect its security interest in Minnesota within "one year after a transfer" of the Equipment to Plaintiff H&S Contracting as required by Minnesota Statute § 336.9-316.

In short, Plaintiff H&S Contracting and Defendant Kinetic argue, FB&T is deemed never to have had a perfected security interest in the Equipment because FB&T failed to perfect its security interest here in Minnesota within one year after October 1, 2015—the date the Equipment was first sold by CCI to Plaintiff H&S Contracting, and therefore, Defendant Kinetic has the only perfected security interest.[4]

---

[4] Kinetic originally asserted that it needed additional time to conduct discovery into the exact date FB&T learned CCI was selling collateral subject to a security interest to determine if FB&T had waived any such interest, and in

Defendant FB&T argues that its "security interest in the cash proceeds from the sale of the Equipment by Ritchie [Brothers] continues indefinitely under" § 336.9-315(d)(2), and that the September 16, 2016, sale occurred before the expiration of the one year term, "so FB&T is entitled to those proceeds on deposit with the Court" because the Ritchie Brothers' sale occurred before October 2, 2016, and "if the security interest in the original collateral was perfected, a security interest in identifiable cash proceeds will remain perfected indefinitely, regardless of whether the security interest in the original collateral remains perfected." (FB&T Mem., [Docket No. 31], at 13–16) (citing Minn. Stat. § 336.9-315 cmt. 7 (emphasis added by FB&T)). Defendant FB&T asserts that nothing in Minn. Stat. § 336.9-316(b) changes this result as it too provides that FB&T's security interest in the September 16, 2016, sale proceeds will remain perfected thereafter due to the fact that FB&T's interest in those sale proceeds was perfected before the expiration of the one year time frame.

The issue of which entity, Kinetic or FB&T, has priority and is therefore entitled to the proceeds of the Ritchie Brother' September 16, 2016, sale is contingent on whether FB&T was required to file a security interest in Minnesota after the September 16, 2016, sale occurred. Whether or not such a filing was required is determined by the interplay between Minnesota Statutes §§ 336.9-315 and 336.9-316.

In relevant part, Minnesota Statute § 336.9-315 provides as follows:

(a) Disposition of collateral: continuation of security interest or agricultural lien; proceeds. Except as otherwise provided in this article and in section 336.2-403(2):
　　(1) a security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorizes the disposition free of the security interest . . .; and
　　(2) a security interest attaches to any identifiable proceeds of collateral.
. . .

---

fact, Kinetic moved this Court to extend the Pretrial Scheduling Order in the present case. Kinetic, however, has since withdrawn that Motion to Extend, and it has made no further argument asserting either a need for discovery or that FB&T has waived any security interest rights.

(c) Perfection of security interest in proceeds. A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected.

(d) Continuation of perfection. A perfected security interest in proceeds becomes unperfected on the 21st day after the security interest attaches to the proceeds unless:

　. . .

　　(2) the proceeds are identifiable cash proceeds . . . .

Minn. Stat. § 336.9-315. Comment[5] number 4 to Minn. Stat. § 336.9-315 provides that "[t]he loss of perfected status under subsection (d) is prospective only. Compare, e.g., Section 9-515(c) (deeming security interest unperfected retroactively)." Comment number 7 to Minn. Stat. § 336.9-315 provides that "[u]nder subsection (d)(2), if the security interest in the original collateral was perfected, a security interest in identifiable cash proceeds will remain perfected indefinitely, regardless of whether the security in the original collateral remains perfected."

Minnesota Statute § 336.9-316, provides as follows:

(a) General Rule: effect on perfection of change in governing law. A security interest perfected pursuant to the law of the jurisdiction designated in section 336.9-301(1) or 336.9-305(c) remains perfected until the earliest of:

　. . .

　　(3) the expiration of one year after a transfer of collateral to a person that thereby becomes a debtor and is located in another jurisdiction.

(b) Security interest perfected or unperfected under law of a new jurisdiction. If a security interest described in subsection (a) becomes perfected under the law of the other jurisdiction before the earliest time or event described in that subsection, it remains perfected thereafter. If the security interest does not become perfected under the law of the other jurisdiction before the earliest time or event, it become unperfected and is deemed never to have been perfected as against a purchaser of the collateral for value.

Minn. Stat. § 336.9-316.

It is undisputed that "FB&T's lien against the [Equipment] was perfected in the state of South Dakota prior to and during: (1) the sale from CCI to H&S Contracting; (2) the sale from

---

[5] The comments to the Minnesota Statutes were taken from the official comments to the UCC. Minnesota Courts regularly and consistently look to these comments to interpret portions of the Minnesota Statutes. See, e.g., Milbank Mut. Ins. Co. v. Proksch, 309 Minn. 106, 111–12 (1976).

H&S Contracting to Kinetic; and (3) the [Ritchie Brothers] auction on September 16, 2016."
(Plaintiffs' Mem., [Docket No. 42], at 2–3). FB&T's perfected security interest in the KPI
Crusher also survived the sale from CCI to H&S Contracting, the sale from H&S Contracting to
Kinetic, the lease back transaction between H&S Contracting and Kinetic, and the May 24, 2016,
sale of the KPI Crusher. Minn. Stat. § 336.9-315.

Plaintiff H&S Contracting and Defendant Kinetic, however, assert that pursuant to Minn.
Stat. § 336.9-316(b), FB&T's security interest in the physical equipment became unperfected
and was "deemed never to have been perfected as against" H&S Contracting or Kinetic because
FB&T did not perfect its security interest in the KPI Crusher or the other Equipment in
Minnesota before October 2, 2016—the expiration of one year after CCI sold all the Equipment
to H&S Contracting and the collateral equipment was physically moved to Minnesota. Plaintiff
H&S Contracting and Defendant Kinetic argue that Kinetic thus holds the only perfect security
interest in the Equipment, and therefore, Defendant Kinetic is entitled to the proceeds of the
September 16, 2016, Equipment sale. The Court finds this argument unpersuasive for at least two
reasons.

First, when Defendant FB&T first learned in September 2016, that the Equipment had
been moved to Minnesota it still had a perfected South Dakota securely interest in the physical
collateral (recognized in Minnesota until October 1, 2016, even without being refiled in
Minnesota). When FB&T learned the property was to be sold without its authorization it
contacted Ritchie Brothers who then contacted all the involved parties for permission to proceed
with the September 2016 sale. Ritchie Brothers' representative informed the representative of
Defendant Kinetic, as well as, Defendant FB&T that the sale would only proceed if both parties
authorized Ritchie Brothers to conduct the auction and agreed the Equipment would be sold free

and clear of their respective liens. It is undisputed that both FB&T and Kinetic agreed to allow the sale to proceed free and clear of their respective liens as against any buyer in due course at the Ritchie Brothers auction. FB&T and Kinetic thus effectively waived their respective lien interest in the physical collateral before the September 16, 2016, sale thereof by Ritchie Brothers. Because the Equipment was mutually agreed to be sold free of any liens as against any buyer at the auction, thereafter there was no collateral against which FB&T could have re-filed its security interest in Minnesota. It had agreed to allow the Equipment to be sold free of liens, and therefore, it could not have filed a security interest in Minnesota encumbering the Equipment.

After the September 2016, auction sale, FB&T and Kinetic could only have a security interest in the resulting proceeds of the September 2016, sale; they could no longer have a security interest in the actual collateral. Although Defendant Kinetic and Plaintiff H&S Contracting assert that FB&T was required to reperfect its security interest in the Equipment collateral in Minnesota, they fail to articulate how FB&T could have perfected the security interest when both FB&T and Kinetic agreed the September 2016, auction sale would allow any buyer to take the Equipment free and clear of their respective liens.

More importantly, a plain reading of Minn. Stat. § 336.9-315 and Minn. Stat. § 336.9-316 demonstrate that FB&T was not required to reperfect its security interest in the physical Equipment sold at the September 2016, sale in order for FB&T's security interest to continue indefinitely in the identifiable proceeds resulting from that sale. Minnesota Statute § 336.9-315(c) provides that "[a] security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected." (emphasis added). As illustrated by the use of the term "was," this provision does not require continued perfection in the physical

14

collateral; it only requires perfection in the collateral at the time of the collateral's sale. See, Minn. Stat. § 336.9-315(c). Further, that security interest in the proceeds is indefinite if "the proceeds are identifiable cash proceeds." Minn. Stat. § 336.9-315(d).

In the present case, it is undisputed that FB&T had the superior perfected South Dakota security interest in the Equipment sold at the September 2016, auction sale as of that time. Consequently, that senior perfected security interest gave FB&T the senior perfected security interest in the resulting, identifiable proceeds from the September 2016, sale.

It is further undisputable that the proceeds from the September 2016, sale are in fact identifiable cash proceeds as those proceeds have been deposited with the Court. [Docket No. 11, 12]. Accordingly, FB&T's security interest in the cash proceeds of the September 2016, equipment sale by Ritchie Brothers' Auctioneers continues indefinitely.

This continued perfection is further illustrated by Comment 7 to Minn. Stat. § 336.9-315 which provides that "[u]nder subsection (d)(2), if the security interest in the original collateral was perfected, a security interest in identifiable cash proceeds will remain perfected indefinitely, regardless of whether the security in the original collateral remains perfected." Comment 7 specifically provides, therefore, that FB&T's security interest in the identifiable cash proceeds from the September 16, 2016, sale now at issue will continue even if its original security interest in the collateral Equipment had subsequently become unperfected.

Despite this on-point commentary, Plaintiff H&S Contracting and Defendant Kinetic assert that FB&T's security interest in the proceeds was extinguished when it failed to reperfect in Minnesota its security interest in the collateral Equipment before October 2, 2016, as they argue was required by Minn. Stat. § 336.9-316, and therefore, that failure to reperfect a security interest in the physical collateral allegedly deemed FB&T's security interest to have never been

perfected. According to Kinetic and H&S Contracting, this means that FB&T retroactively would not have had a perfected security interest in the Equipment sold at the September 2016, auction sale, and therefore, it cannot have a perfected security interest in the resulting, identifiable cash proceeds from that sale.

Neither Plaintiff H&S Contracting nor Defendant Kinetic provide this Court with a citation to any authority which has adopted H&S Contracting and Kinetic's interpretation of the interplay between Minn. Stat. § 336.9-315 and Minn. Stat. § 336.9-316. Likewise, the undersigned can find no case authority which has ever interpreted Minn. Stat. § 336.9-315 and Minn. Stat. § 336.9-316 in the manner H&S Contracting and Kinetic now invite this Court to do. This lack of apposite authority is likely because such an interpretation would be contradictory to Minn. Stat. § 336.9-315, Comment 7 which provides that "if the security interest in the original collateral <u>was</u> perfected, a security interest in identifiable cash proceeds will remain perfected indefinitely, <u>regardless</u> of whether the security in the original collateral remains perfected." (Emphasis added). Minnesota Courts interpreting the Minnesota Uniformed Commercial Code have consistently held that the statutes must be interpreted "consistent with legislative intent and in a sensible manner that avoids unreasonable, unjust, or absurd results." <u>Minnesota Min. & Mfg. Co. v. Nishika Ltd.</u>, 565 N.W.2d 16, 20 (Minn. 1967) (citing Minn. Stat. § 645.17(1); <u>Thoresen v. Schmahl</u>, 222 Minn. 304, 311 (1946)).

As noted above, FB&T's present security interest is in the identifiable cash proceeds from the September 2016, equipment sale, and not in the physical collateral itself. Minnesota Statute § 336.9-316, on its face, <u>only</u> contemplates the continuation and expiration of a security interest in collateral which was perfected in one jurisdiction and then transferred to another jurisdiction. <u>See</u>, Minn. Stat. § 336.9-316(a). FB&T's security interest is now in the identifiable

cash proceeds from the September 2016, sale which is subject to and indefinitely perfected pursuant to the laws of Minnesota. See, Minn. Stat. § 336.9-315(d)(2).

Accordingly, the Court finds that FB&T's claim to the cash proceeds from the September 16, 2016, sale of the Equipment is superior to any claim of Plaintiff H&S contracting, Inc. or Defendant Kinetic Leasing, Inc. Therefore, FB&T's motion for summary judgment on its claim for the cash proceeds of the September 16, 2016, auction sale[6] is **GRANTED**, and Kinetic Leasing, Inc.'s motion for summary judgment on its claim for these same cash proceeds is **DENIED**.

### B.  First Bank & Trust's Common Law Conversion Claims

Defendant FB&T's Motion for Summary Judgment, [Docket No. 30], next asks the Court to enter judgment in "favor of FB&T and against H&S Contracting, Inc., jointly and severally, in the amount of $550,000.00 for conversion of [all] the Equipment."[7] Specifically, FB&T asserts that "H&S converted FB&T's collateral, the Equipment, when it sold [all] the collateral to Kinetic and again when it cooperated with Kinetic to sell some of the Equipment [KPI Crusher] through Iron Planet" and "[s]imilarly, Kinetic also converted FB&T's collateral by purchasing it from H&S, leasing it [all] back to H&S, and again by selling some of the Equipment [KPI Crusher] through Iron Planet." (FB&T Mem., [Docket No. 31], at 21).[8]

"The elements of common law conversion are: (1) [asserting party] holds a property interest and (2) [accused party] deprives [asserting party] of that interest." Rachuy v. Pauly, No. A13-0393, 2014 WL 103388, at *3 (Minn. Ct. App. Jan. 13, 2014) (citing Olson v. Moorehead Country Club, 568 N.W.2d 871, 872 (Minn. App. 1997)); see, Williamson v. Prasciunas, 661 N.W. 2d 645, 679 (Minn. Ct. App. 2003).

---

[6] See, fn. 2, supra.
[7] See, fn. 3, supra.
[8] The sale of the KPI Crusher through Iron Planet occurred on May 24, 2016.

Regarding conversions claims in the context of secured transactions, as a threshold matter, Minnesota Courts hold that a claim for conversion may be raised against a buyer of property which was subject to a security interest. See, e.g., Farmers State Bank of Delevan v. Easton Farmers Elevator, 457 N.W.2d 763, 765 (Minn. Ct. App. 1990) ("Because the transferee takes subject to the security interest, the secured party may repossess the collateral or maintain an action for conversion."). This treatment of conversion claims in the secured transaction context is supported by the comments to the relevant Minnesota Statutes.

Minn. Stat. §336.9-315, Comment 2 provides that "[s]ubsection (a)(1) . . . contains the general rule that a security interest survives disposition of the collateral. In these cases, the secured party may repossess the collateral from the transferee or, in an appropriate case, maintain an action for conversion."

However, a "lack of an enforceable [security] interest in the subject property" by the party asserting the conversion claim "is a complete defense against conversion." Noble Systems Corp. v. Alorica Central, LLC, 543 F.3d 978, 986 (8th Cir. 2008) (citing Lassen v. First Bank Eden Prairie, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994)). This complete defense due to a lack of an enforceable interest is because, in the secured transactions context, conversion claims are based on the secured party's security interest in the subject property. See, e.g., Wangen v. Swanson Meats, Inc., 541 N.W.2d 1, 3 (Minn. Ct. App. 1995); Noble Systems Corp., 543 F.3d at 986; Erlandson Implement. Inc. v. First State Bank of Brownsdale, 400 N.W.2d 421, 426–27 (Minn. Ct. App. 1987).

### i. The Equipment sold in September 2016

In relation to the Equipment sold at auction in September 2016, Defendant FB&T asserts that (1) H&S Contracting converted the Equipment when it sold the Equipment to Kinetic, (2)

18

that Kinetic converted the Equipment by purchasing it from H&S Contracting, and (3) that Kinetic again converted the Equipment by leasing it back to H&S Contracting. (FB&T Mem., [Docket No. 31], at 21). However, as mentioned in the previous finding above that FB&T is entitled to the proceeds of the September 2016, auction sale, FB&T specifically agreed to the September 2016, auction sale by Ritchie Brothers.[9] And, the circumstances of the September 16, 2016, sale, particularly FB&T's consent, also operate to preclude a common law conversion claim even based on the 2015 sale and lease back of the Equipment between H&S Contracting and Kinetic. Therefore, FB&T's conversion claims cannot be based on the activities surrounding the September 16, 2016, auction sale of the Equipment because of its consent to that sale.

Under the circumstances of the present case, the Court finds instructive the Eighth Circuit Court of Appeals opinion in Platte Valley Bank v. Tetra Financial Group, LLC, 682 F.3d 1078 (8th Cir. 2012). Although Platte Valley was governed by Nebraska law, the Court finds the reasoning therein regarding the conversion claim instructive especially given the similarities between the Nebraska Uniformed Commercial Code and the Minnesota Uniformed Commercial Code. Compare, e.g., Neb. Rev. Stat. Ann. § UCC § 9-316 and Minn. Stat. § 336.9-316. The undersigned also notes that it appears that no other Court in this District nor the Eighth Circuit Court of Appeals has opined as to the effect of an agreed upon sale of property subject to a security interest upon a conversion claim based on the security interest in that sold property.

In Platte Valley, Platte Valley Bank claimed a perfected security interest in equipment owned by Heggem Construction to secure Heggem Construction's ("Heggem") obligation to Platte Valley Bank. Platte Valley, 682 F.3d at 1079. Subsequently, Heggem entered into a

---

[9] Although H&S Contracting purchased the Equipment and KPI Crusher from CCI for a total of $550,000.00, and the amount on deposit with the Court is $335,285.25, the Court notes that the KPI Crusher which was sold through the Iron Planet Sale sold for an additional $220,000.00 separate from the other Equipment sold at the auction in September 2016. The conversion claims involving the KPI Crusher are discussed below.

leaseback agreement with Tetra Financial Group, LLC, ("Tetra") whereby Heggem would sell equipment to Tetra which would then lease the equipment back to Heggem. Id. at 1079–81. At all times, Heggem maintained physical possession of the equipment. Id. at 1081. Tetra then sold the equipment to Republic Bank and assigned the lease in exchange for $555,899 which was all memorialized in documents in which Tetra claimed to hold "a first lien and priority in the equipment" and to transfer the equipment free of all liens and encumbrances. Id. Based on those transactions, Platte Valley Bank filed suit asserting a claim of conversion against Tetra and Republic Bank. Id. at 1082. However, of significance for the case now before this Court, it is critical to note that after filing suit Platte Valley Bank itself "repossessed and sold the equipment . . . to pay down Heggem's debt to [Platte Valley Bank]. Neither Tetra nor Republic interfered with [Platte Valley Bank's] repossession and sale of the equipment." Id.

The Platte Valley Court found that Platte Valley Bank did not have a claim for conversion against Tetra or Republic based on its security interest in the equipment. Id. at 1083–85. The Platte Valley Court reasoned that "[b]ecasue Heggem always maintained possession of the equipment, [Platte Valley Bank] was able to recover the equipment intact, liquidate it, and use the amount received to pay down Heggem's loan, just as it would had Heggem never sold the equipment or obtained financing from appellees." Id. at 1085. The undersigned believes that the same reasoning applies to the present case.

In the present case, the Equipment at issue in the September 2016, auction was liquidated with the consent of FB&T and, given the previous analysis of the undersigned, FB&T has priority position to receive the full cash proceeds amount gained through that September 2016, liquidation. FB&T has failed to make any assertion that the September 2016, auction sale of the Equipment in any way netted a significantly lesser sum than if FB&T had physically repossessed

20

and sold the Equipment itself rather than through Ritchie Brothers Auctioneers by agreement. The <u>Platte Valley</u> Court further reasoned that "[a]ppellees' purchase of the equipment did not substantially alter the condition of location of the equipment, increase [Platte Valley Bank's] expense or inconvenience in recovering the equipment, or hinder [Platte Valley Bank's] right to possess the equipment upon Heggem's default and sell it to satisfy Heggem's obligation," that reasoning does not materially differ from the present case. Although H&S Contracting and Kinetic did initially alter the physical location of the Equipment from South Dakota to Minnesota, after FB&T learned that the Equipment had been sold by CCI to H&S Contracting, there was no interference with FB&T's ability to gain control over the disposition of the Equipment. In fact, upon learning the Equipment was to be sold by Ritchie Brothers, FB&T specifically authorized that sale. Moreover, it does not appear in the record that FB&T incurred any additional expense in recovering the Equipment as it was not itself required to physically recover the Equipment pre-auction because H&S Contracting and Kinetic had already arranged the sale of the Equipment through Ritchie Brothers without any repossession costs to FB&T.

In short, as was the case in <u>Platte Valley Bank</u>, FB&T is now in a materially similar position as it would have been if it had repossessed the Equipment from CCI. Because FB&T could have repossessed or sold the Equipment at issue on September 15, 2016, just like it could have if CCI had never sold the equipment, the intervening actions of H&S Contracting and Kinetic did not interfere with FB&T's security interest.

This Court is unaware of, and FB&T fails to highlight, any other Court which allowed a party to maintain a common law conversion claim based on a security interest in subject collateral property where the party asserting the conversion claim itself authorized the

disposition of the subject property and received the proceeds of the subject property's disposition.

In other words, neither H&S Contracting nor Kinetic deprived FB&T of rights in its security interest in the Equipment because FB&T is receiving the proceeds from the September 2016, disposition of the Equipment; which disposition FB&T itself in fact authorized. Therefore, FB&T cannot maintain a claim for common law conversion of the Equipment which was sold at auction in September 2016.

The Court also notes that in addition to the preceding analysis, FB&T's conversion claims on the physical Equipment at issue in the September 2016, sale also fail because FB&T is attempting to base its conversion claim on a security interest which no longer exists in the physical property/collateral.

As already observed, in the security interest context, a conversion claim is based on the secured party's security interest in the subject property. See, e.g., Wangen, 541 N.W.2d at 3; Noble Systems Corp., 543 F.3d at 986; Erlandson Implement. Inc., 400 N.W.2d at 426–27. And a "lack of an enforceable [security] interest in the subject property" by the party asserting the conversion claim "is a complete defense against conversion." Noble Systems Corp., 543 F.3d at 986.

It is undisputed that FB&T did not ever perfect its security interest in any of the physical equipment at issue in this case in Minnesota within one year of the Equipment's transfer into Minnesota.[10] In other words, FB&T's security interest in that Equipment became "unperfected and is deemed never to have been perfected as against" H&S Contracting or Kinetic. See, Minn.

---

[10] Although FB&T raises the argument that an email agreement between the parties determined the time at which the priority to the Equipment would be determined, it raises no such argument that said agreement has any relation to its conversion claims. A review of the correspondence among FB&T and Kinetic indicates that there is no indication that the correspondence related in any way to a claim for conversion.

Stat. § 336.9-316. (Emphasis added).[11] FB&T therefore lacks any enforceable security interest in the physical Equipment, and consequently, FB&T is now barred from pursuing a conversion claim based on the physical Equipment. See, Noble Systems Corp., 543 F.3d at 986.

In the present case, although Plaintiff H&S Contracting originally took from CCI the Equipment at issue subject to FB&T's South Dakota security interest, because FB&T "fail[ed] to reperfect in" Minnesota that security interest "within a year after the" Equipment was sold to H&S Contracting in Minnesota, FB&T's "security interest becomes unperfected and is deemed never to have been perfected against" H&S Contracting, and H&S Contracting "take[s] free of the security interest." See, in accord, Minn. Stat. § 336.9-316, Cmt. 3, Example 5. As H&S Contracting "take[s] free of the security interest," FB&T lacks any enforceable security interest in the Equipment itself, and therefore, FB&T cannot now pursue a conversion claim against H&S Contracting based on the purchase or sale of the Equipment from CCI. See, Noble Systems Corp., 543 F.3d at 986.

Accordingly, FB&T motion for summary judgment in its favor on its conversion claims against H&S Contracting and Kinetic Leasing based on the physical Equipment is **DENIED**.

### ii. The May 24, 2016, sale of the KPI Crusher

FB&T also seeks summary judgment on its claim that Plaintiff H&S Contracting and Defendant Kinetic converted FB&T secured collateral when H&S Contracting and Kinetic sold the KPI Crusher through Iron Planet on May 24, 2016. However, for reasons similar to those just discussed above, FB&T conversion claim based on the KPI Crusher must also fail.

---

[11] FB&T argues that because its conversion claim accrued before the expiration of the one year time period and because causes of action continue indefinitely once accrued, the conversion claim continues indefinitely. However, allowing the conversion claim to continue indefinitely would directly contradict the plain wording of Minn. Stat. § 336.9-316 which provides that the security interest underlying the conversion claim is "deemed never to have been perfected." (emphasis added).

As already explained, in the security interest context, a conversion claim is based on the secured party's security interest in the subject property. See, e.g., Wangen, 541 N.W.2d at 3; Noble Systems Corp., 543 F.3d at 986; Erlandson Implement. Inc., 400 N.W.2d at 426–27. And a "lack of an enforceable interest in the subject property" by the party asserting the conversion claim "is a complete defense against conversion." Noble Systems Corp., 543 F.3d at 986.

As is the case with the alleged conversion of the Equipment sold in September 2016, FB&T lacks an enforceable security interest in the KPI Crusher sold in May 2016.

It is undisputed that FB&T did not ever perfect its security interest in the KPI Crusher in Minnesota within one year of the KPI Crusher's transfer into Minnesota. In other words, FB&T's security interest in that KPI Crusher became "unperfected and is deemed never to have been perfected as against" H&S Contracting or Kinetic. See, Minn. Stat. § 336.9-316.[12] FB&T lacks an enforceable security interest in the KPI Crusher, and therefore, it is barred from now pursuing a conversion claim based on the KPI Crusher. See, Noble Systems Corp., 543 F.3d at 986.

In the present case, although H&S Contracting originally took the KPI Crusher from CCI subject to FB&T's South Dakota security interest, because FB&T "fail[ed] to reperfect in" Minnesota "within a year after the" KPI Crusher was sold to H&S Contracting in Minnesota, FB&T's "security interest [became] unperfected and is deemed never to have been perfected against" H&S Contracting or Kinetic, and therefore, H&S Contracting and Kinetic "take free of the security interest." See, in accord, Minn. Stat. § 336.9-316, Cmt. 3, Example 5. As H&S Contracting and Kinetic "take free of the security interest," FB&T lacks any enforceable security interest in the KPI Crusher, and therefore, FB&T cannot now pursue a conversion claim against H&S Contracting or Kinetic based on the purchase or sale of the KPI Crusher. See, Noble Systems Corp., 543 F.3d at 986.

---

[12] See, fn. 11, supra.

Accordingly, FB&T's motion for summary judgment in its favor on its conversion claims against H&S Contracting or Kinetic Leasing based on the KPI Crusher is **DENIED**.

### C.  Kinetic's Breach of Warranty Claim Against H&S Contracting

Defendant Kinetic Leasing seeks summary judgment in its favor on its breach of warranty of title counterclaim against Plaintiff H&S Contracting. (Kinetic Mot. [Docket No. 43]).[13]

On October 2, 2015, H&S Contracting executed a bill of sale memorializing the sale to Kinetic of the Equipment at issue in the September 2016, auction. (Bill of Sale [Docket No. 45-2]). This bill of sale contained the following provision:

> TO HAVE AND TO HOLD the same unto the Buyer, it successors and assigns, forever. The Seller covenants and agrees to and with the Buyer, its personal representatives, successors and assigns, to WARRANT AND DEFEND the sale of said property, goods and chattels, against all and every person or persons whomever. When used herein, the singular shall include the plural, the plural the singular, and he use of any gender shall be applicable to all genders.

(Bill of Sale [Docket No. 45-2]). At the Motions Hearing, Defendant and Counterclaimant Kinetic's counsel acknowledged that it was Kinetic who drafted the October 2, 2015, bill of sale. (April 9, 2018, Motions Hearing, Digital Recording at 2:16–2:19 p.m.).

Kinetic now asserts that if the "Court finds that [FB&T] has a security interest in the proceeds of the" Equipment, H&S Contracting is required to "to defend Kinetic in the present matter and as such, Kinetic is entitled to its reasonable attorney's fees in this matter which it has incurred defending itself." (Kinetic Mem., [Docket No. 44], at 16).

In support of its Motion, Kinetic only defines the term "'warrant' as a promise or guarantee and also as giving warranty of title;" asserts that H&S Contracting agreed to "warrant

---

[13] Although Plaintiffs did not file a written response to Kinetic's motion in this regard, Kinetic is not entitled to summary judgment in its favor as a matter of default. Rule 56(a) allows Kinetic to prevail here only if it is "entitled to a judgment as a matter of law."

the sale of the Equipment against all and every person;" and asserts that "H&S guaranteed the possession of clear title of the Equipment and promised to defend the sale of the Equipment against all persons, including [FB&T]." (Id. at 15).

While the language contained within the October 2, 2015, bill of sale may require H&S Contracting to defend Kinetic regarding the sale of the Equipment under certain circumstances, the Court finds that based on the specific record now before the Court those circumstance have not been demonstrated. Accordingly, the aforementioned "have and hold" provisions contained in the October 2, 2015, bill of sale have not been triggered. Therefore, H&S Contracting is under no obligation to defend Kinetic in the present action.

The October 2, 2015, bill of sale requires H&S Contracting to "WARRANT and DEFEND the sale of" the Equipment. As Defendant and Counterclaimant Kinetic's counsel acknowledge at the Motions Hearing, at the time of the September 2016, auction sale of the Equipment, no party had raised any legal action with claims against Kinetic regarding the sale of the Equipment. (April 9, 2018, Motions Hearing, Digital Recording at 2:17–2:21 p.m.). And, in fact, Defendant and Counterclaimant Kinetic itself waived any lien interest it had, consented and agreed to the September 2016, auction sale. At the time of the September 2016, auction sale Kinetic could have declined to allow the sale to proceed or repossessed the Equipment under its lease with H&S Contracting, however, it is undisputed that Kinetic affirmatively allowed the September 2016, auction sale to proceed with any buyer taking free and clear of any security interest Kinetic may have had in the Equipment.

Plaintiff H&S Contracting initiated the present declaratory action seeking a determination as to who is entitled to the proceeds of the September 2016, auction sale. In initiating the present case, H&S Contracting asserted that it was actually Kinetic not FB&T which was entitled to the

proceeds of the September 2016, auction sale. Although Plaintiff H&S Contracting also raised a claim against Kinetic asserting that Kinetic breached the contract agreement between those two parties when it instructed Ritchie Brothers to withhold the proceeds from the sale of the Equipment, Kinetic has failed to show how that claim is related to the "sale of the" Equipment clause contained in the October 2, 2015, bill of sale. Under the circumstances of the present case, nothing on the face of the October 2, 2015, bill of sale required H&S Contracting to defend Kinetic against a breach of contract claim raised by H&S Contracting itself.

To the extent Kinetic believed the October 2, 2015, bill of sale provided for a greater warranty and defense provisions, it has failed to provide this Court with either any argument or evidence demonstrating as much. To the extent Kinetic argues that any ambiguity exist in the bill of sale, the Court will not construe such alleged ambiguity in Kinetic's favor as Kinetic's counsel acknowledged that it was Kinetic who drafted the October 2, 2015, bill of sale. See, World Wide Tracers, Inc. v. Metro Prot., Inc., 384 N.W.2d 442, 448 (Minn. 1986) (ambiguities are construed against the drafter).

Therefore, Defendant and Counterclaimant Kinetic's motion for summary judgment on its breach of warranty of title counterclaim against Plaintiff H&S Contracting is **DENIED**.

## III.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendant First Bank and Trust's Motion for Summary Judgment, [Docket No. 30], be **GRANTED in part and DENIED in part**, as set forth above**;**

2. The proceeds from the September 16, 2016, sale of the Equipment which are on deposit with the Court should be distributed to First Bank & Trust; and

3.   Defendant Kinetic Leasing, Inc.'s Motion for Summary Judgment, [Docket No. 43],

be **DENIED**.


Dated: June 8, 2017                                          s/Leo I. Brisbois_____
                                                            The Honorable Leo I. Brisbois
                                                            United States Magistrate Judge



**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).